1

2

3    **UNITED STATES DISTRICT COURT**

4    **NORTHERN DISTRICT OF CALIFORNIA**

5    **SAN JOSE DIVISION**

6

7    NIALL LEDWIDGE, et al.,                         Case No.  5:24-cv-08352-BLF

8                 Plaintiffs,

9          v.                                         **ORDER GRANTING DEFENDANT'S
                                                      MOTION TO DISMISS FIRST
10    FEDERAL DEPOSIT INSURANCE                       AMENDED COMPLAINT**
      CORPORATION, et al.,
11                                                    [Re:  ECF No. 51]
                  Defendants.
12

13          Before the Court is Defendants Federal Deposit Insurance Corporation ("FDIC")[1] and

14    former FDIC Chairman Martin J. Gruenberg's motion to dismiss Plaintiffs' First Amended

15    Complaint ("FAC") for lack of subject matter jurisdiction under Federal Rule of Civil

16    Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

17    ECF No. 51 ("Mot."); *see also* ECF No. 65 ("Reply").  Plaintiffs oppose the motion.  *See* ECF

18    No. 64 ("Opp.").  The Court heard oral argument on the motion on October 16, 2025.  ECF

19    No. 67.

20          After oral argument, the Court set a supplemental briefing schedule addressed to the issue

21    whether Plaintiffs' agency standing theory is collaterally estopped by the recent decision of United

22    States Bankruptcy Court of the Southern District of New York in *Joint Official Liquidators of

23    Silicon Valley Bank (in Official Cayman Islands Liquidation) v. SVB Financial Group*, No. 24-

24    AP-04014-MG (Bankr. S.D.N.Y. Sept. 29, 2025) ("Bankr. Order").  Defendants filed supporting

25    briefs, and Plaintiffs filled an opposing brief.  *See* ECF No. 71 ("Estoppel Br."); ECF No. 72

26    ("Estoppel Opp."); ECF No. 74 ("Estoppel Reply").

27

28    _____

[1] Plaintiffs bring this action against the FDIC in its corporate capacity ("FDIC-C").

*United States District Court
Northern District of California*

1    For the reasons described below, the Court GRANTS the motion.

2    **I.    BACKGROUND**

3    The collapse of Silicon Valley Bank ("SVB") was one of the largest bank failures in U.S.

4    history.  SVB was an FDIC-insured, state-chartered bank headquartered in Santa Clara, California.

5    *See* Amended Complaint ("AC") ¶ 28, ECF No. 39.  This case involves SVB's foreign branch in

6    the Cayman Islands ("SVB Cayman").  *Id.* ¶ 29.  SVB Cayman offered its clients three types of

7    accounts: Eurodollar Money Market Accounts, Eurodollar Operating Accounts, and Eurodollar

8    Sweep Accounts.  *Id.* ¶ 33.  Plaintiffs assert claims only on behalf of former SVB Cayman clients

9    with Eurodollar Money Market Accounts and Eurodollar Operating Accounts (the "SVB Cayman

10   Accountholders").  *Id.* ¶ 86.  The SVB Cayman Accountholders were able to take advantage of the

11   Cayman Islands' favorable tax policies, but the SVB Cayman account agreements expressly stated

12   that the accounts were not deposits as defined by the FDIC.  *Id.* ¶ 39 ("SVB Eurodollar Money

13   Market Account deposits are . . . . NOT domestic deposits, are NOT insured by the FDIC and are

14   NOT guaranteed in any way by the United States government or any government agency

15   thereof."); *see also id.* ¶ 42 (Eurodollar Operating Accounts).

16   SVB collapsed on March 10, 2023.  *Id.* ¶ 28.  Two days later, on March 12, 2023, Treasury

17   Secretary Janet Y. Yellen, Federal Reserve Board Chair Jerome H. Powell, and Defendant FDIC

18   Chairman Martin J. Gruenberg issued a joint press release (the "Joint Press Release") in which

19   they announced that all SVB assets and liabilities would be transferred to FDIC-Receiver ("FDIC-

20   R").  *Id.* ¶ 71.  The Joint Press Release further announced that the FDIC would be invoking the

21   system risk exception ("SRE"), which allows depositors at FDIC-insured depository institutions to

22   recover the full value of their deposits above the usual $250,000 cap on deposit insurance and

23   relieves the FDIC of its obligation to adhere to the least cost resolution requirement mandated by

24   the Federal Deposit Insurance Act ("FDI Act").  *Id.* ¶¶ 71–72; *see also* 12 U.S.C. § 1823(c)(4).

25   On March 13, 2023, the FDIC issued a press release announcing that the FDIC would be

26   transferring "all deposits—both insured and uninsured—and substantially all assets of" SVB to the

27   newly chartered Silicon Valley Bridge Bank, N.A. ("SVB Bridge").  AC ¶ 76.  On March 27,

28   2023, SVB was closed and placed into receivership and all deposits, virtually all assets, and

1    certain liabilities of SVB Bridge were transferred to First-Citizens Bank & Trust Company ("First

2    Citizens"). *Id.* ¶¶ 82–84.

3          On March 31, 2023, FDIC-R sent notices to the SVB Cayman Accountholders stating that

4    the balances held by customers in accounts originating at SVB Cayman were not deposits within

5    the meaning of the FDI Act and that the SVB Cayman Accountholders were accordingly general

6    unsecured creditors, notifying them of their ability to file claims with FDIC-R by the July 10,

7    2023, claims bar date. *Id.* ¶¶ 86–87.  SVB Cayman clients holding Eurodollar Sweep Accounts

8    did not receive the notices, and their accounts were granted "insured deposit" status and full

9    protection by the SRE. *Id.* ¶ 88.  The FDIC's stated justification for this decision was that a

10   certain amount of funds associated with the Eurodollar Sweep Accounts had "swept back" into an

11   FDIC-insured deposit account located in the United States prior to the commencement of the SVB

12   receiverships. *Id.* ¶ 91.

13         Many of the SVB Cayman Accountholders—all but 11 of the 615 depositors with

14   Eurodollar Money Market Accounts and Eurodollar Operating Accounts—filed claims with

15   FDIC-R.  FDIC-R issued determinations on each claim brought by the SVB Cayman

16   Accountholders. *Id.*, Ex. 27 at 4.  On June 13, 2023, several individuals purporting to represent

17   certain SVB Cayman Accountholders petitioned a court in the Cayman Islands to "wind up" SVB

18   Cayman and to appoint joint official liquidators ("JOLs") under Cayman Islands law. *Id.* ¶ 85 &

19   Ex. 22.  Because SVB Cayman was not a separate legal entity from SVB, the court ordered the

20   winding up of SVB and appointed Plaintiffs as the JOLs of SVB itself with respect to Cayman

21   Islands-based assets and affairs on June 30, 2023.  *See id.*, Ex. 4 at 1–2.

22         On April 17, 2024, Plaintiffs sent a letter to the FDIC pursuant to 12 U.S.C. § 1821(f)

23   demanding that the FDIC classify their accounts as insured deposits and fully insure those

24   accounts. *Id.*, Ex. 27.  On September 25, 2025, the FDIC sent Plaintiffs a letter denying their

25   claim for deposit insurance on the grounds that Plaintiffs lacked standing to represent the interest

26   of the SVB Cayman Accountholders and that FDIC was prohibited from paying insurance claims

27   for foreign-payable accounts. *Id.*, Ex. 28.  Plaintiffs initiated this action on November 22, 2024,

28   *see* ECF No. 1, and filed the Amended Complaint on April 3, 2025, *see* ECF No. 39.

## II.    LEGAL STANDARD

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint.  *Id.*  In a factual attack, the movant disputes the truth of allegations that otherwise would give rise to federal jurisdiction.  *Id.*  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.*  "The court need not presume the truthfulness of the plaintiff's allegations."  *Id.*  If the moving party presents evidence demonstrating the lack of subject matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient to establish subject matter jurisdiction.  *Id.*

Upon granting a motion to dismiss, a court has discretion to allow leave to amend the complaint pursuant to Rule 15(a).  "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment."  *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital*.  The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *See* 316 F.3d at 1052.

## III.    DISCUSSION

Defendants move to dismiss the Amended Complaint on two grounds.  First, Defendants seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction because Plaintiffs do not have standing.  Second, Defendants seek dismissal under Rule 12(b)(6) for failure to state a claim. "[J]urisdiction generally must precede merits in dispositional order."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999).  Only if the Court is satisfied that it has subject matter jurisdiction may it proceed to address Defendants' merits arguments under Rule 12(b)(6).  *See id.*

United States District Court
Northern District of California

("Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them.").  The Court need not address Defendants' Rule 12(b)(6) motion because it grants Defendants' Rule 12(b)(1) motion.

### A.  Standing to Sue on Behalf of SVB

As a threshold matter, the Court agrees with Defendants that, to the extent Plaintiffs purport to act for SVB by virtue of their appointment as JOLs of SVB Cayman, *see, e.g.*, AC ¶¶ 115–32, 138, 146, 155, they cannot do so.  *See* Mot. at 8–9.  When the FDIC was appointed as SVB's receiver, it "succeed[ed] to . . . all rights, titles, powers, and privileges of" SVB.  12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added).  "[N]o court may take any action, except at the request of the [FDIC] Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver."  *Id.* § 1821(j); *see also Sahni v. Am. Diversified Partners*, 83 F.3d 1054, 1058 (9th Cir. 1996).  Accordingly, Plaintiffs lack standing to assert any claims on behalf of SVB.

### B.  Standing to Sue on Behalf of the SVB Cayman Accountholders

Defendants also assert that Plaintiffs lack standing to sue on behalf of the SVB Cayman Accountholders.  Mot. at 9–10.  Plaintiffs respond with two theories: (1) they possess associational standing to pursue claims on behalf of the foreign bankruptcy estate, and (2) they possess agency standing as the duly appointed agents of the SVB Cayman Accountholders as a matter of Cayman Islands law.  Opp. at 22–25.  Plaintiffs' associational standing theory fails as a matter of law, and Plaintiffs' agency standing theory is collaterally estopped.

#### 1.  Associational Standing

"The doctrine of associational standing permits an organization to 'sue to redress its members' injuries, even without a showing of injury to the association itself.'"  *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (quoting *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 552 (1996)).  An association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither

United States District Court
Northern District of California

1    the claim asserted nor the relief requested requires the participation of individual members in the

2    lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Fleck &*

3    *Assocs., Inc. v. Phoenix, City of, an Arizona Mun. Corp.*, 471 F.3d 1100, 1106 (9th Cir. 2006).

4    "Associational standing is a narrow and limited exception to the general rule that litigants must

5    assert their own rights." *United Safeguard Distrib. Ass'n v. Safeguard Bus. Sys., Inc.*, No. 15-cv-

6    03998-RSWL-AJW, 2016 WL 2885848, at *5 (C.D. Cal. May 17, 2016).

7            Plaintiffs' associational standing theory fails the first prong of the *Hunt* standard because a

8    foreign bankruptcy estate is not an association.  Anticipating Defendants' argument on this point,

9    Plaintiffs emphasize that "[i]n the Ninth Circuit, courts have held that informal organizations

10   representing the interests of a uniquely vulnerable group, such as the homeless and the disabled,

11   can be associations in this context if the organization's activities inure specifically to the

12   constituents' benefit."  Opp. at 24.  While that may be the case, where a purported association

13   lacks a "traditional membership structure," courts still require "indicia of membership," i.e., that

14   there are members or constituents that (1) elect leadership of the organization, (2) serve as part of

15   that leadership, and (3) finance the organization's activities.  *Hunt*, 432 U.S. at 344–45.

16           Plaintiffs provide no authority for their novel legal argument that a bankruptcy estate,

17   which lacks any informal or formal membership structure or discernible membership, constitutes

18   an association for the purpose of standing.  Nor do Plaintiffs provide any of the required "indicia

19   of membership" that could overcome their purported association's lack of a traditional

20   membership structure.  *Hunt*, 432 U.S. at 344–45.  Here, Plaintiffs were not elected by the SVB

21   Cayman Accountholders they purport to represent, are not themselves SVB Cayman

22   Accountholders, and are not financed by SVB Cayman Accountholders.  Because Plaintiffs fail to

23   articulate a theory where "the association is sufficiently identified with and subject to the influence

24   of those it seeks to represent as to have a personal stake in the outcome of the controversy," their

25   theory of associational standing necessarily fails.  *Am. Unites for Kids v. Rousseau*, 985 F.3d

26   1075, 1096 (9th Cir. 2021) (quoting *Mink*, 322 F.3d at 1111).

27           Plaintiffs' associational standing arguments fails for the independent reason that they also

28   fail to allege that they have themselves suffered a cognizable injury in fact for Article III purposes.

While Plaintiffs purport to act as representatives of the SVB Cayman Accountholders, "in order to claim the interests of others, the litigants themselves still must have suffered an injury in fact." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543 (2020); *see also Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013); *Powers v. Ohio*, 499 U.S. 400, 410 (1991).  Indeed, the Supreme Court recently reiterated the brightline requirement that plaintiffs who file suits in a representative capacity must still allege an injury to themselves.  *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393 (2024) ("The third-party standing doctrine does not allow doctors to shoehorn themselves into Article III standing simply by showing that their patients have suffered injuries or may suffer future injuries.").

### 2. Agency Standing

"The doctrine of collateral estoppel bars the relitigation of issues that were resolved in a prior proceeding, even if the later suit involves a different cause of action."  *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992).  To foreclose relitigation of an issue under collateral estoppel, the following four conditions must be met:  "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits."  *Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017).  The party asserting preclusion has the burden of showing with clarity and certainty what was determined by the prior judgment.  *Clark v. Bear Stearns & Co. Inc.*, 966 F.2d 1318, 1321 (9th Cir. 1992).

Plaintiffs do not meaningfully dispute that the issue at stake before the Bankruptcy Court was identical, that the issue was actually litigated, and that the issue was necessary to decide the merits.  Before the Bankruptcy Court, Plaintiffs asserted standing based on their "contractual designation by [the Cayman accountholders] as their agent—pursuant to the ordinary tenets of agency law in the Cayman Islands," Bankr. Order at 38 n.11, 46, which is the same argument they make here.  *See* Opp. at 21–22.  The Bankruptcy Court heard from both Parties' experts in Cayman Island law, who *agreed* that the orders of the Cayman court could not create an agency relationship between the JOLs and SVB Cayman Accountholders.  Bankr. Order at 72–73.  After holding that Plaintiffs failed to establish either an ex ante or ex post agency relationship, *see id.*

at 74–75, the Bankruptcy Court dismissed Plaintiffs' claims because they failed to "establish[] that they have standing under Cayman law to bring claims on behalf of the Cayman creditors." *Id.* at 3, 76.  A decision on standing was necessary to the merits of the Bankruptcy Order, since it is a jurisdictional issue that is a prerequisite to bringing any of the claims asserted in those proceedings. *See id.* at 60 ("Standing is a jurisdictional requirement that must be met in order to have claims litigated in federal court." (citation omitted)).

Plaintiffs nonetheless argue that they did not have a fair and full opportunity to argue the merits of their standing argument because the Bankruptcy Court "did not allow for introduction of facts other than Cayman law expert testimony, while the Bankruptcy Court Decision also faulted Plaintiffs for not providing (factual) evidence supporting the agency formation."  Estoppel Opp. at 2.  Plaintiffs do not (and cannot) deny that, following extensive briefing, the Bankruptcy Court held a two-day evidentiary hearing on standing during which they presented evidence from the same expert whose declaration they submitted in this case and relied upon the same evidence they rely on here (e.g., Cayman court orders and the opt-out notice to SVB Cayman Accountholders). *See* Bankr. Order at 2–3, 53–57.  Tellingly, Plaintiffs fail to identify even a single piece of evidence that they were purportedly barred from presenting to the Bankruptcy Court, and it is not incumbent on this Court to sift through the voluminous filings in those proceedings in search of evidence that may have changed the outcome of the Bankruptcy Order.

As a last-ditch effort, Plaintiffs quibble that the Court should decline to apply the doctrine of collateral estoppel because Defendants "did not provide any of the Bankruptcy Court record, submissions or transcripts that bear on the collateral estoppel factors," Estoppel Opp. at 1, and urging that this case "implicates serious matters of public policy, including the power of the FDIC to selectively apply SRE coverage," *id.* at 2.  The Court is not aware of any requirement that parties seeking to invoke collateral estoppel must provide the full record of the prior proceeding. The case cited by Plaintiffs certainly does not establish any such requirement, explaining only that the party invoking collateral estoppel "must introduce a sufficient record of the prior proceedings to pinpoint the exact issues previously litigated." *Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992).  Submitting the Bankruptcy Order's voluminous order on the precise issue is

1    sufficient here.  The Court also finds that issues of public policy are not sufficiently grave so as to

2    counsel against application of the collateral estoppel doctrine.  *Cf. Collins v. D.R. Horton, Inc.*,

3    505 F.3d 874, 882 (9th Cir. 2007).  The Court accordingly finds that, all four prongs having been

4    met, the Bankruptcy Order precludes re-litigation of Plaintiff's agency standing theory.

5         In any case, even if the Bankruptcy Order did not have preclusive effect, the Court agrees

6    with Defendants that Plaintiffs fail to allege that they possess either Article III or prudential

7    standing.  *See* Mot. at 9–11.  As explained *supra*, quite apart from associational or agency

8    standing, Plaintiffs have made no showing that they themselves suffered a concrete or

9    particularized injury that is attributable to Defendants.  *See, e.g.*, *Pioneers Mem'l Healthcare Dist.*

10   *v. Imperial Valley Healthcare Dist.*, 745 F. Supp. 3d 1088, 1102–04 (S.D. Cal. 2024) (explaining

11   that third-party standing is premised on plaintiff having suffered a cognizable injury).  Nor have

12   they made the requisite showing of prudential standing that they had a close relation to the SVB

13   Cayman Accountholders or that there is "some hindrance to the [SVB Cayman Accountholder's]

14   ability to protect [their] own interests." *Powers*, 499 U.S. at 411.  Indeed, it is undisputed that

15   many of the SVB Cayman Accountholders have already protected their own interests by initiating

16   their own administrative claims with the FDIC.  *See SurvJustice Inc. v. DeVos*, No. 18-cv-00535-

17   JSC, 2019 WL 1434141, at *8 (N.D. Cal. Mar. 29, 2019) (explaining that prudential standing

18   requirements are not met when there is evidence that the third party have brought their own

19   claims).

20        Plaintiffs argue that the Court should allow amendment so that they may "furnish[] a set of

21   written and executed agency agreements containing an assignment of the right to bring this

22   litigation."  Estoppel Opp. at 3.  As a threshold matter, whether a plaintiff has standing to sue as an

23   assignee "is determined as of the date of filing the complaint."  *In re Ditropan XI Antitrust Litig.*,

24   No. 06-cv-01761-JSW, 2007 WL 2978329, at *2 (N.D. Cal. Oct. 11, 2007); *see also Wilbur*

25   *v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005), *abrogated on other grounds*, *Levin v. Com. Energy,*

26   *Inc.*, 560 U.S. 413 (2010) ("[S]tanding is determined as of the date of the filing of the

27   complaint . . . .  The party invoking the jurisdiction of the court cannot rely on events that

28   unfolded after the filing of the complaint to establish its standing." (second alteration in original)

United States District Court
Northern District of California

9

(quoting *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005)).

In any event, the case upon which Plaintiffs rely stands only for the proposition that an assignee has standing when the assignment agreement grants her "a security interest in the very claims being pursued." *Bank of Am., N.A. v. F.D.I.C.*, 908 F. Supp. 2d 60, 85–86 (D.D.C. 2012). Plaintiffs do not suggest that the agency agreements they intend to introduce gave them any ownership interests in the funds in the Cayman accounts at issue in this case.  Plaintiffs' agency theory of standing is estopped, and amendment would be futile.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the motion is granted and the FAC is DISMISSED WITH PREJUDICE.

Dated:  December 1, 2025

_____
BETH LABSON FREEMAN
United States District Judge